# In the United States Court of Federal Claims

No. 25-1182
Filed: August 21, 2026

| | |
|---|---|
| NEVILLE CHEMICAL COMPANY,<br>*Plaintiff*,<br>v.<br>THE UNITED STATES,<br>*Defendant*. | ) |

**OPINION AND ORDER**

In the 1920's, the United States Army Corps of Engineers built the Emsworth Locks and Dams on the Ohio River a few miles northwest of Pittsburgh, Pennsylvania. Neville Chemical Company ("Neville") owns four parcels of land that are submerged under the Ohio River upriver of these dams. One of these dams sits on Neville's property. Neville contends that its property is flooded because of the continued operation of the dams. This flooding and the physical occupation of the dam have allegedly constitute a taking of Neville's property. The question before the court is whether Neville's claims are barred by this court's six-year statute of limitations.

## I. Background

### A. The Emsworth Lock and Dams

In 1918, Congress appropriated $5 million for the "[c]ontinuing improvement by the construction of locks and dams with a view to securing a navigable depth of nine feet" on the Ohio River. River and Harbor Act of 1918, ch. 155, 40 Stat. 904, 908 (attached as ECF No. 17-7 (Def.'s Ex. B)). Construction began on the Emsworth Lock and Dams in 1919 and continued into 1922. U.S. Army Corps of Engineers, Emsworth Locks and Dams (Jan. 10, 2024) at https://www.lrd.usace.army.mil/DesktopModules/ArticleCS/Print.aspx?PortalId=73&ModuleId=151166&Article=3640878 (last visited Aug. 21, 2026) (attached as ECF No. 17-3 (Def.'s Ex. A-2)). The first vessels transited the locks in September 1921. *Id.* Between 1935 and 1938, the United States Army Corps of Engineers ("the Corps") converted the dams to gated dams, which allow greater control of the upriver pool. *Id.* This conversion raised the upriver pool by approximately seven feet. *Id.* Another major rehabilitation of the facilities took place between 1981 and 1986. *Id.* Altogether, these dams and locks are part of a system of dams and locks that maintain the depth of the Ohio River to ensure navigability from its origin in Pittsburgh to its confluence with the Mississippi River at Cairo, Illinois. *Id.*

The Emsworth Locks and Dams consist of two parts. On the main channel of the Ohio River,[1] the Corps built a dam and locks, which allow maritime navigation on the main channel. This dam runs from the north side of Neville Island to the opposite shore of the river until it reaches the locks,[2] which run parallel to the shoreline. On the back channel of the Ohio River is another dam, which runs from the south side of Neville Island to the opposite shore. There are no locks on the back channel. These structures are depicted below:




ECF No. 17-2 (Def.'s Ex. A-1).[3]

---

[1] The court adopts the same terminology as the Parties. The "main channel" is the larger channel that is north of Neville Island. The "back channel" is the smaller channel that is south of Neville Island.

[2] There is a smaller lock for recreational traffic and a larger lock for barge and commercial traffic.

[3] While the Government's exhibit shows that Parcel 157-D-70 is entirely within Parcel 157-D-15-2, this is inaccurate. Parcel 157-D-70 actually sits east of and adjacent to Parcel 157-D-15-2. *See* ECF No. 11-1. Because Neville's exhibit is difficult to read, the court also confirmed this on Allegheny County's online Geographic Information System. *See*

### B. Plaintiff's property

Neville owns four parcels of real property in Neville Township, Pennsylvania. ECF No. 11 ¶ 4 (Compl.). These parcels are identified as Parcels 157-D-70, 157-D-15-0-2,[4] 158-G-2, and 158-A-25. *Id.* They range in size from 14,100 to 723,096 square feet, and they cover a combined 808,591 square feet. *Id.* Neville owns these parcels in fee simple. *Id.* ¶ 5. According to Neville, the continued operation of the back channel has "rendered [Neville's parcels] damaged and unusable." *Id.* ¶ 6. And Neville contends that the Corps is unaware that the back channel dam sits on Neville's property. *Id.* ¶ 7. Therefore, Neville seeks just compensation for the taking of its property. *Id.* at 4.

### C. Procedural history

Neville initially filed this case in state court in Allegheny County, Pennsylvania. *See* ECF No. 1. The United States removed the case to the United States District Court for the Western District of Pennsylvania. *Id.* The Parties then jointly moved to transfer this case to this court. ECF Nos. 2–5.

The Government moves to dismiss for lack of subject-matter jurisdiction, arguing that any claim for just compensation accrued far more than six years before Plaintiff's complaint was filed and is therefore barred by the statute of limitations, 28 U.S.C. § 2501. ECF No. 17 at 5. Neville responded by arguing that dismissal under Rule 12(b)(6) is inappropriate in this case. ECF No. 19. Because this motion is governed by Rule 12(b)(1), the court ordered supplemental briefing on a narrow set of issues. ECF No. 21. The court heard oral argument, and the motion to dismiss is now ripe for decision.

## II. Discussion

### A. Legal Standards

"Subject matter jurisdiction is a threshold issue that must be determined at the outset of a case." *King v. United States*, 81 Fed. Cl. 766, 768 (2008) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1998)). This court's primary source of jurisdiction is the Tucker Act, 28 U.S.C. § 1491, which authorizes claims against the United States "founded either upon the Constitution, or any act of Congress or any regulation of an executive department, or

---

https://experience.arcgis.com/experience/68f5e4ae2f5b47b78cefcdf019e154bd/ (last visited Aug. 21, 2026). To see the subject parcels, enter the parcel number in the GIS search bar.

[4] The Government contends that this parcel is misidentified and should be 157-D-115-0-2. ECF No. 17 at 3, n.4. Neville responds that it verified the proper parcel number with Allegheny County, and its complaint is correct. ECF No. 18 at 1, n.1. The court need not resolve this dispute to decide the Government's motion to dismiss. That said, Allegheny County's online Geographic Information System appears to identify this parcel as 157-D-115-0-2. *See* GIS Viewer, Allegheny County, https://experience.arcgis.com/experience/68f5e4ae2f5b47b78cefcdf019e154bd (last visited Aug. 21, 2026). Because the Parties use 157-D-15-2, that is the identifier which the court uses in this opinion.

upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). But "[t]he Tucker Act itself does not create a substantive cause of action." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). To establish jurisdiction, a plaintiff "must identify a separate source of substantive law that creates the right to money damages." *Id.* In certain circumstances, the Takings Clause of the Fifth Amendment can serve as such a money-mandating source of law. *Bd. of Supervisors of Issaquena Cnty. v. United States*, 174 Fed. Cl. 315, 321–22 (2024).

An action brought pursuant to the Tucker Act must be filed within six years of the claim's accrual unless another statute of limitations applies. 28 U.S.C. § 2501. This six-year window is a "jurisdictional requirement attached by Congress as a condition on the government's waiver of sovereign immunity and, as such, must be strictly construed." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed. Cir. 1988). Because it is jurisdictional, § 2501 is not subject to equitable tolling. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 135–37 (2008). A claim first accrues, and thus the limitations period begins to run, once "all the events which fix the government's liability have occurred and the plaintiff was or should have been aware of their existence." *Hopland*, 855 F.2d at 1577.

Neville bears the burden of establishing this court's subject-matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When deciding a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The court may also consider matters outside the pleadings relevant to the jurisdictional inquiry. *Land v. Dollar*, 330 U.S. 731, 735, n. 4 (1947); *Reynolds*, 846 F.2d at 748. Ultimately, if the court determines that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006); RCFC 12(h)(3).

**B. Analysis**

The Government moves to dismiss under Rule 12(b)(1), arguing that any takings claim accrued more than six years before Neville filed its complaint. ECF No. 17 at 5–7.

First, Neville contends that the construction of the back channel dam on its property constitutes a physical taking of its property under the dam.[5] But Neville lacks standing to pursue that claim. To establish standing to bring a takings claim, Neville must show that it owned the property on the date of the alleged taking. *Scarpaci v. United States*, 178 Fed. Cl. 536, 550 (2025) (collecting cases). It cannot do so. Recall that the Corps completed the initial construction of the back channel dam in 1922 and reconfigured the dam in a project completed in 1938. The Government has provided the court with two deeds conveying the four parcels at issue in this case, both of which Neville does not dispute. ECF No. 17-4 (Def.'s Ex. A-3), ECF No. 17-5 (Def.'s Ex. A-4). The first of these deeds is dated May 5, 1947. ECF No. 17-4 at 2. And the other deed is dated June 19, 1985. ECF No. 17-5 at 2. Either way, Neville did not

[5] To be clear, the court is discussing only the physical occupation of the property on which the dam sits, not the upriver flooding that the dam created.

obtain any interest in the parcels at issue until 1947—twenty-five years *after* the Corps placed the back channel dam into operation. The court must dismiss the complaint insofar as it asserts a physical occupation and taking of the property by the construction of the dam on Neville's property. *See* RCFC 12(h)(3).

Second, the Government contends that satellite imagery shows that the area was flooded no later than 1993. ECF No. 17-6 (Def.'s Ex. A-5). Taken together, the construction history and satellite imagery suggest that Plaintiff's property has been under water since long before the six-year period preceding the filing of the complaint. ECF No. 17 at 7. The Government thus contends that Plaintiff has not carried its burden of establishing that its claim accrued within the limitations period and that dismissal for lack of subject-matter jurisdiction is warranted. *Id.*

Neville advances a stabilization theory of claim accrual for the first time in its supplemental brief. Relying on *United States v. Dickinson*, 331 U.S. 745 (1947), Neville contends that a takings claim arising from "continuous and gradual" flooding does not accrue until the situation has "stabilized," such that "the consequences of the inundation have so manifested themselves that a final account may be struck." ECF No. 22 at 3, 6. Neville draws analogies to *Dickinson* and appears to argue that stabilization "only recently occurred in obtaining an appraisal . . . which reflected that certain properties were submersed by the continuous and gradual flooding caused by the operation of the [Emsworth Dam]." *Id.* at 6.

Neville's argument fails for at least two reasons. The first reason is that Neville conflates the *stabilization* of the flooding of its property with its *discovery* of the flooding of its property. Neville learning that its property is flooded during a recent appraisal is not dispositive for determining when the claim itself accrued. Generally, a claim only accrues once "all events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action." *Hopland*, 855 F.2d at 1577. Thus, in a takings context, the court looks to the date on which the plaintiff had constructive—rather than actual—knowledge that its property had been "clearly and permanently taken." *Etchegoinberry v. United States*, 165 Fed. Cl. 696, 710 (2023) (citing *Boling v. United States*, 220 F.3d 1365, 1370 (Fed. Cir. 2000); *Patton v. United States*, 64 Fed. Cl. 768, 775 (2005)); *see also Whiteland Holdings, L.P. v. United States*, 141 Fed. Cl. 702, 711 (2019) ("Ignorance of a claim that a plaintiff should have been aware of is not enough to suspend the accrual of a claim."). Consistent with these principles, the Federal Circuit has explained that "stabilization occurs when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined." *Boling*, 220 F.3d at 1370–71. The question, then, is when the flooding stabilized—not when Neville happened to discover the flooding.

The second, and related, reason is that the complaint alleges no facts addressing when the flooding stabilized or otherwise supporting application of the stabilization doctrine. Although the court specifically directed Neville to explain when it contends the property became submerged, ECF No. 21 at 2, Neville did not do so. Nor did Neville identify when the flooding stabilized. That said, Neville accurately points out that the Government's reliance on the single satellite image from 1993 does not carry the day as it only provides a snapshot of the water levels

of the back channel, not that the water levels shown have been stable since that time.[6] ECF No. 26, Tr. 6:19–7:14. Regardless, the satellite image does raise significant questions regarding how long the back channel has been flooded. Because Neville provides no reason to suggest that stabilization occurred within six years of its filing of the complaint, Neville has not carried its burden of proving this court's subject-matter jurisdiction by a preponderance of the evidence. *See Reynolds*, 846 F.2d at 748.

Now, the court must consider next steps. One option would be to allow jurisdictional discovery, given that the questions regarding stabilization are factual ones that could be flushed out with targeted discovery. *See* ECF No. 26, Tr. 18:11–19:12. But jurisdictional discovery is not a great fit for this case because the complaint does not allege a basis for asserting the stabilization doctrine. A second option would be to grant the motion to dismiss, which would be without prejudice, leaving Neville to file a new complaint alleging facts to support stabilization. Third, the court could grant Neville leave to amend its complaint so that it can attempt to allege facts sufficient to establish the timeliness of its claim—i.e., stabilization. The Government argues that the dismissal should be without leave to amend because Neville could have added facts to support stabilization when it filed its transfer complaint and the Government will again rely on the 1993 satellite image. ECF No. 17 at 7; ECF No. 26, Tr. 16:18–19:3. But the court does not see a reason to deny leave to amend. Because the court's dismissal for lack of subject-matter jurisdiction would be without prejudice, Neville will simply file a new complaint with added facts to support stabilization, and the parties will need to address the sufficiency of those facts either way. And as explained above, the 1993 satellite image alone is likely not enough to overcome a stabilization claim. In these circumstances, allowing Neville the opportunity to amend would serve the interests of justice. *See* RCFC 15(a)(2).

For these reasons, the court **GRANTS** the Government's motion to dismiss, ECF No. 17. However, the court defers entering judgment and grants Neville leave to file an amended complaint within forty-five days of this order. If Neville does not file an amended complaint **on or before Monday, October 5, 2026**, the court will direct the entry of judgment dismissing the complaint pursuant to this order.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge

[6] The Government obtained the satellite imagery from Google Earth. *See* ECF No. 17-6 (Def.'s Ex. A-5). While the 1993 image is the oldest one Google Earth has for the Neville Island area, there are many more recent images available on Google Earth as well that may shed light on the stabilization issue.